UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

WESLEY ODOM,

    Plaintiff,

v.                            Case No. 3:11-cv-00075-RS-MD

CITIGROUP GLOBAL MARKETS INC.;
and CITIGROUP INC.,

    Defendants.

_____ _____ _____/

## COMPLAINT CORRECTED AFTER INTERLINEATION

Plaintiff, Wesley Odom ("Odom"), pursuant to the Court's Order dated September 9, 2014, submits this Complaint Corrected After Interlineation against defendant Citigroup Global Markets Inc., and alleges:[1]

### Jurisdiction and Venue

1.    Odom is an individual residing in Pensacola, Florida. Odom graduated from Vanderbilt University in 1988 and thereafter served in the United States Navy for 11 years (almost 4 years of active duty and 7 years in the reserves).

2.    Citigroup Global Markets Inc. is a Delaware corporation with its principal place of business in New York.

---

[1] Counts I-II of the Complaint were previously settled between the parties. Counts IV-VI of the Complaint were dismissed on December 13, 2013 by the United States District Court for the Southern District of New York, after transfer to that Court by the Judicial Panel on Multidistrict Litigation. The Southern District of New York remanded Count III to this Court at the same time it dismissed Counts IV-VI.

3.   Citigroup Inc. is a Delaware corporation with its principal place of business in New York, New York.

4.   This is an action for damages that exceed $15,000.00, exclusive of costs, interest and attorneys' fees.

5.   This Court has jurisdiction pursuant to Section 26.012(2)(a), Florida Statutes.

6.   Venue is proper in this judicial circuit because the events giving rise to Odom's claims occurred here.

### Odom's Employment With Citigroup Global Markets Inc.

7.   From approximately May 11, 1992 to May 4, 2009, Mr. Odom was employed at a branch of Morgan Stanley Smith Barney, LLC, or its predecessor, as a financial advisor.   On May 4, 2009, Mr. Odom's employer was Citigroup Global Markets Inc. ("CGMI").   CGMI is referred to herein interchangeably as "CGMI" or "Smith Barney."

8.   During Odom's employment, CGMI was one of various affiliates of Citigroup Inc. ("Citi") that sponsored and managed investment funds sold by Citi.   At all pertinent times, CGMI was part of Citigroup Asset Management ("CAM"), a business unit of Citi that provides investment advisory and management services for Citi-sponsored funds.

9.   At all pertinent times, Citi owned 100% of CGMI's membership interests and CGMI's earnings were reported on Citi's balance sheets and financial statements.

10.  At all pertinent times, Citi controlled CGMI through a unified and interlocking management structure.   Specifically, Odom's supervisor was Helene Botos.   Ms. Botos, in turn,

reported to Mike Marciniak, a CGMI Regional Director in Sarasota. Mr. Marciniak, in turn, reported to Kirby Kiblinski, a CGMI officer in Atlanta. Mr. Kiblinski, in turn, reported to Citi's management and, ultimately, to Vikrim Pandit, Citi's CEO in New York.

11. Pursuant to the terms of his employment with CGMI, a large portion of Odom's compensation was fee based. CGMI maintained a system whereby employees were paid in arrears. This meant that, for example, Odom received the compensation he earned during the first quarter of the year (January through March) as part of his June paycheck.

12. During the course of Odom's employment, Citi and CGMI encouraged employees to purchase Citi stock and provided various programs to facilitate such purchases. As one example, CGMI offered a program pursuant to which employees could purchase shares of Citi stock at a 25% discount, but their ownership would not "vest" until two years after the purchase date.

13. Odom purchased Citi stock at various times during the course of his employment with CGMI. Odom directly purchased approximately 10,233 shares of Citi stock during 2006 or in earlier years. Odom was also awarded options to purchase approximately 354 additional shares of Citi stock, at various prices, on June 30, 1998 (139 shares), June 30, 1999 (124 shares) and June 30, 2000 (91 shares). Odom also purchased Citi stock through his 401(k) account in amounts currently unknown because Citi/CGMI has not provided a current statement of account.

## Citi's Involvement in the Sub-Prime Mortgage Market

14-50.   These paragraphs relate only to counts that have been settled or dismissed.

## Events Leading to Odom's Separation from CGMI

51.   Throughout 2008 CGMI management strongly encouraged its financial advisors to market Citi preferred securities to their clients.   Odom's manager, Ms. Botos, was particularly vocal about this.   In 2009, when the preferred market began to collapse, CGMI management informed its financial advisors that they were prohibited from advising clients to sell their Citi preferred securities.   Instead, the financial advisors were instructed that they could only advise clients to buy Citi securities.

52.   In March or April 2009, during an internal conference call, CGMI management informed its financial advisors to encourage clients to establish Citigroup "Gold" accounts.   These accounts offer competitive CD rates, but are burdened with very high monthly charges.   In response to questions about why the company was encouraging sales of this product notwithstanding the expense, the financial advisors were told frankly that Citi was in need of cash and that they should inform their clients to support the firm.

53.   On May 4, 2009, Odom's manager, Ms. Botos, confronted Odom in his office.   She asked Odom if he was informing clients that the Citi/Smith Barney joint venture could result in higher fees and explaining the opt out procedure.   Odom explained that he had indeed done so and further explained that his clients

4

deserved to know the material information necessary to make informed decisions. Ms. Botos informed Odom that she did not think Odom was allowed to provide such information to clients, but would "check with legal." Ms. Botos returned a short while later and demanded that Odom sign a letter of resignation, or she would have to fire him. She added, "You don't want me to fire you because it would tarnish your career in the industry." Unwilling to damage his heretofore laudable career, Odom reluctantly complied and provided a letter of resignation.

54. Just prior to his resignation, Ms. Botos and others associated with CGMI or Citi pressured Odom to sign an additional document waiving and/or releasing his legal rights vis a vis CGMI and/or Citi. Odom refused to sign this document.

55. CGMI failed to pay Odom over $20,000.00 in commissions due from January 1, 2009 through May 4, 2009. As previously noted, due to CGMI's compensation system, a large portion of the unpaid commissions were earned by Odom during the first quarter of 2009.

56. In addition to the non-payment of commissions, Odom has lost in excess of $600,000.00 due to the decline in value of his Citi stock. These losses are the direct result of the actions of CGMI and/or Citi, including but not limited to: (1) misrepresenting the strength and viability of Citi from and after 2007; (2) prohibiting Odom from selling his Citi stock; and (3) prohibiting Odom from shorting his Citi stock.

57. Odom has retained undersigned counsel to represent him in this matter and agreed to pay a reasonable attorneys' fee.

### Counts I, II, IV, V and VI:

58-67, 78-101.   These paragraphs relate only to counts that have been settled or dismissed.

### Count III:
### Violation of Fla. Stat. Sec. 448.103

68.   This is a claim against CGMI for violation of the Florida Private Employee Whistle-Blower Act.

69.   Odom realleges and incorporates paragraphs 1-13 and 51-57 as if fully set forth herein.

70.   At all material times, Odom was an "employee" of CGMI as that term is defined in the Florida Private Employee Whistle-Blower Act.

71.   At all material times, CGMI was a private corporation that employed ten or more persons, and is thus an "employer" as that term is defined in the Florida Private Employee Whistle-Blower Act.

72.   The Securities and Exchange Act of 1934 and Rule 10B-5 prohibit misrepresentations and material omissions by financial advisors such as CGMI concerning securities they market and sell, such as Citi stock.

73.   Due to his background and experience as a licensed securities broker for more than 17 years, Odom was familiar with the Securities and Exchange Act and the duties of financial advisors in marketing the securities of publicly traded companies like Citi.

74.   Based upon his background and experience, Odom objectively and reasonably believed that CGMI was engaging in

6

unlawful activity by prohibiting its financial advisors from advising clients to sell their Citi preferred securities, encouraging clients to establish "Gold" accounts because Citi was in need of cash, and prohibiting advisors from advising clients regarding the financial impact of the Citi/CGMI joint venture and their ability to opt out.

75. Odom objected to and refused to comply with CGMI's instructions with respect to the preferred securities, "Gold" accounts and endorsement of the Citi/CGMI joint venture. As a direct result, CGMI took retaliatory personnel action against him by demanding that he submit his resignation. CGMI also took retaliatory personnel action against Odom by denying his requests for a list of his clients upon his resignation, notwithstanding company policy to provide such a list to departing advisors.

76. CGMI unlawfully demanded Odom's resignation based on his objection to and refusal to comply with its instructions, which Odom reasonably believed to be illegal, in violation of the Florida Private Employee Whistle-Blower Act.

77. As a direct and proximate result of CGMI's violation of the Florida Private Employee Whistle-Blower Act, Odom has suffered lost wages and benefits, loss of clients, severe emotional distress, emotional pain, suffering, inconvenience, mental anguish and other non-pecuniary losses.

FOR RELIEF, plaintiff Wesley Odom respectfully requests the Court to enter judgment against CGMI, granting relief including, but not limited to:

A.   an award of compensatory damages in an amount to be proven at trial for all losses caused by defendant's misconduct;

B.   an award of the costs incurred in prosecuting this action;

C.   an award of pre- and post-judgment interest at the maximum rates allowed by law;

D.   pursuant to Section 448.104, Fla. Stat., an award of the attorneys' fees and costs incurred in prosecuting this claim; and

E.   such other relief as the Court deems just and equitable.

## Jury Demand

Plaintiff hereby demands trial by jury of all issues so triable.

AUSLEY & McMULLEN, P.A.

/s/Martin B. Sipple
  Robert N. Clarke, Jr.
  Fla. Bar No. 0592900
  Martin B. Sipple
  Fla. Bar No. 0135399
  227 South Calhoun Street
  P.O. Box 391 (zip 32302)
  Tallahassee, Florida 32301
  (850) 224-9115 - telephone
and

KIEVIT, ODOM & BARLOW
  Bradley S. Odom
  Fla. Bar No. 932868
  635 West Garden Street
  Pensacola, Florida 32502
  (850) 434-3527 - telephone

Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing was served via the Court's ECF system the <u>23rd</u> day of September, 2014, to:

Tracy Nichols
Holland & Knight LLP
701 Brickell Ave., Ste. 3300
Miami, Florida  33131

Kevin W. Cox
Holland & Knight LLP
315 South Calhoun Street
Suite 600
Tallahassee, Florida 32301

/s/Martin B. Sipple\_\_\_\_\_
Attorney